# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE Z.,[1] <br>     **Plaintiff,** <br>   v. <br> ANDREW M. SAUL,[2] **Commissioner of Social Security,** <br>     **Defendant.** | NO. EDCV 18-2476-KS <br><br> MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Jose Z. ("Plaintiff") filed a Complaint on November 26, 2018, seeking review of the denial of his applications for Disability Insurance ("DI") benefits and Supplemental Security Insurance ("SSI"). (Dkt. No. 1.) On January 8, 2019, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13.) On December 31, 2019, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 27.) Plaintiff seeks an order reversing and remanding the ALJ's decision for immediate award

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The Court notes that Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Andrew M. Saul for Nancy A. Berryhill as the defendant in this action.

of benefits or, alternatively, for further proceedings. (Joint Stip. at 12-13.) The Commissioner requests that the ALJ's decision be affirmed. (*Id.* at 13.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF PRIOR PROCEEDINGS**

On March 2, 2015, Plaintiff, who was born on June 15, 1969, filed applications for DI benefits and for SSI. (*See* Administrative Record ("AR") 185-93; Joint Stip. at 2.) Plaintiff alleged disability commencing September 30, 2010.[3] (AR 185.) He previously worked as a construction laborer (DOT[4] 869.687-026) and a material handler (DOT 929.687-030). (AR 60.) After the Commissioner initially denied Plaintiff's applications and reconsideration (AR 67-84, 87-110), Plaintiff requested a hearing (AR 127-28). Administrative Law Judge Lynn Ginsberg (the "ALJ") held a hearing on April 20, 2017. (AR 31.) Plaintiff and a vocational expert testified. (AR 32-66.) On November 14, 2017, the ALJ issued an unfavorable decision. (AR 12-26.) On September 26, 2018, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2010. (AR 17.) She found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. (*Id.*) She determined that Plaintiff had the following severe impairments: insulin dependent diabetes mellitus; cirrhosis of the liver; hypertension; asthma; history of alcohol abuse reported in remission; and obesity.

---

[3] Plaintiff was 41 years old at the alleged disability onset date and 45 on the date he filed his applications for DI and SSI; thus, on both dates, he met the agency's definition of a younger person. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). He has since become a "person closely approaching advanced age" within the definition set out in the regulations. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).
[4] "DOT" refers to the *Dictionary of Occupational Titles*.

2

(*Id.*) After specifically considering listings 3.03, 4.00, 5.00, 5.05, 9.00, and the impairment of obesity using the criteria for musculoskeletal, respiratory, and cardiovascular impairments under listings 1.00Q, 3.00I, and 4.00F, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (AR 18.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> "[He] can lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he needs a sit/stand option at the work station every 30 minutes, but would not be off task more than 10% of the workday; he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he can have occasional exposure to environmental irritants, such as fumes, odors, dusts, and gases, and occasional exposure to poorly ventilated areas; he can have only occasional use of moving, hazardous machinery; and he can have only occasional exposure to unprotected heights and work on uneven terrain."

(AR 18-19.)

The ALJ found that Plaintiff was unable to perform his past relevant work. (AR 24.) She then found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of packer (DOT 559.687-074), assembler (DOT 929.587-010), and inspector (DOT 920.687-194). (AR 25-26.) Accordingly, the ALJ

determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from disability onset date through the date of the ALJ's decision. (AR 26.)

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citation omitted). "Even when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

4

**DISCUSSION**

There is one issue in dispute: whether substantial evidence supports the ALJ's RFC determination. (Joint Stip. at 4.) As discussed below, the ALJ's RFC assessment is supported by substantial evidence.

**I.     Legal Standard**

A claimant's RFC represents the most a claimant can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1); *Reddick*, 157 F.3d at 724; *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). The ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Reddick*, 157 F.3d at 722. An ALJ can satisfy the specific and legitimate reasons standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Orn*, 495 F.3d at 632; *see* 20 C.F.R. § 416.945(a)(3) (stating that Commissioner will assess RFC "based on all of the relevant medical and other evidence").

//
//
//
//
//
//
//
//
//
//

## II. Evidence of Plaintiff's Treatment[5]

### A. Objective Medical Evidence

The record contains no evidence predating Plaintiff's disability onset date and date last insured, September 30, 2010. The earliest evidence in the record is a November 5, 2010 cardiac stress test, which showed that Plaintiff's exercise stress tolerance was good, implying a good long term prognosis; and a negative test of myocardial ischemia at the level of exercise and workload achieved. (AR 334.) The record contains no additional evidence until December 2011, when Plaintiff presented to the emergency room complaining of abdominal discomfort and constipation, and seeking medication refills. (AR 328-29.) The examining doctor noted that Plaintiff was obese and had asthma, for which he was treated with inhalers.[6] (*Id.*) Plaintiff received a medication refill, but his progress notes from this period were otherwise unremarkable. (AR 330-33.) In November 2012, Plaintiff again presented to the emergency room, complaining of recurrent right flank pain (for which he had last been treated one year earlier). (AR 420-22.) Following examination, Plaintiff was diagnosed with right flank pain, acute; pyelonephritis, right, acute; hematuria; pyuria; hyperglycemia, diabetes mellitus, poorly controlled; dehydration; and abdominal pain. (AR 422.) He was discharged with a prescription for antibiotics and pain medication. (*Id.*)

//
//

---

[5] The record consists of nearly 2000 pages of medical evidence (*see* AR 276-2161), as well as opinion evidence from state agency consultants contained in Plaintiff's initial disability determination and the decision on reconsideration (*see* AR 71-98). In the Joint Stipulation, Plaintiff contends that the ALJ fairly and accurately summarized the medical and non-medical evidence of record, except as specifically noted in the Issues and Contentions section of the Joint Stipulation. (Joint Stip. at 4.) Accordingly, only the evidence specifically cited by the ALJ in her decision or by the parties in the Joint Stipulation is summarized in this Order, as supplemented by any additional discussion the Court deems necessary for a full and adequate presentation of the relevant evidence in this case.

[6] The record shows that Plaintiff's weight was documented in the medical record from a low of 252 pounds to a high of 280 pounds. (*See* AR 322 (June 2013), 473 (March 2014).) At a height of 5'9", Plaintiff body mass index was in the range of 37.2 to 41.3, which signifies that Plaintiff was obese within the meaning of the Social Security Clinical Guidelines. (*See* AR 22 n.1 (citing Soc. Sec. Reg. 02-1p and discussing definition of "obesity").)

A more consistent chronological chain of evidence begins in May 2013, Plaintiff was treated in the emergency room for hyperglycemia after reported mild nausea and headache. (AR 415-16) He was treated with medications for nausea and headache, his blood sugar decreased to a manageable level, and he was discharged. (*Id.*) In June 2013, Plaintiff presented with right flank pain and was assessed with right perinephric hematoma, rule out underlying mass versus vascular malformation; anemia, thrombocytopenia with perinephric hematoma; diabetes; hypertension; and asthma. (AR 390-91.) He was treated with antibiotics for the perinephric hematoma and discharged in stable condition. (AR 379.) Also in June 2013, chest x-ray results showed no active chest disease. (AR 412.)

In July 2013, Plaintiff again presented with complaints of persistent right flank pain. (AR 313, 315.) A physical examination revealed bilateral lower extremity edema, but no ulceration, cyanosis, or calf tenderness; and there was no indication of neurological limitations in Plaintiff's upper and lower extremities. (AR 314-15.) Plaintiff's hypertension was noted as controlled with medications and a low salt diet. (AR 316.) His medications were continued, he was instructed to exercise as tolerated and lose weight, and he was referred for cardiac evaluation. (AR 316-17.) Although findings from the echocardiogram were unremarkable (AR 311-12), an ultrasound of Plaintiff's abdomen showed hematoma and fluid collection; consequently, Plaintiff was hospitalized and his abdomen was drained (AR 301).

Despite a history of alcohol abuse and cirrhosis, in September 2013, Plaintiff acknowledged that he still drank a 12-pack case of beer per week. (AR 297.) In October 2013, he reported being compliant with his diabetes medications, denied hypoglycemic episodes, and he was noted as having cirrhosis, hypertension, a right renal mass, and diabetes mellitus. (AR 288-89.) Between March 2014 and January 2015, Plaintiff presented with complaints of blurred vision, excessive thirst, frequent infections, frequent urination, heartburn, constant hunger, and increased fatigue. (AR 473, 479, 482.) Although in March 2014, he complained of burning in his extremities, he denied sweating, headaches, fatigue, nausea, shortness of

7

breath, or irregular heartbeat associated with hypertension. (AR 473.) By January 2015, Plaintiff reported that he no longer experienced burning in his extremities. (AR 482.) During this period, Plaintiff was noted as having liver cirrhosis, diabetes, an enlarged spleen, hyperlipidemia, asthma, lumbago, and benign essential hypertension. (AR 473, 479, 482) He showed normal respiratory inspection and lung clear to auscultation and percussion. (AR 479.) Plaintiff was noted as being medication compliant and his prior medications were continued. (AR 476, 480, 484.) Due to neuropathy, in March 2014, Plaintiff was also prescribed a nerve pain medication and referred to a podiatric specialist for a foot examination. (AR 476.) In January 2015, he reported that the medication effectively controlled his neuropathy pain. (AR 482.) He was also referred for an eye examination, but there is no evidence that he followed up on this referral. (AR 484.)

Laboratory results from July 2014 showed that Plaintiff continued to have elevated blood sugar levels. (AR 486-91.) An ultrasound of Plaintiff's abdomen from the same time showed an enlarged echogenic liver, most compatible with fatty infiltration. (AR 492.) Laboratory findings from May 2015 continued to show that Plaintiff's diabetes was poorly controlled, and Plaintiff's doctor prescribed him insulin. (AR 507.)

In September 2015, Plaintiff was noted to be on the same medications for diabetes and neuropathy. (AR 1332-36.) He denied fatigue, headaches, or chest pain associated with hypertension. (AR 1332.) An examination of Plaintiff's abdomen produced unremarkable results. (AR 1334.) In February 2016, an ultrasound of Plaintiff's liver showed unchanged findings from the July 2014 study (fatty change of the liver), and an ultrasound of Plaintiff's bilateral legs showed no evidence of bilateral lower extremity DVT. (AR 515-16.) February 2016 echocardiography results also returned with normal findings, indicating no heart issues. (AR 2120.) Due to an indication of right pleural effusion, Plaintiff was treated with thoracentesis (*i.e.*, drainage). (AR 521.) In April 2016, findings from a physical examination showed no evidence of respiratory distress or other issues. (AR 1344.) In May 2016, Plaintiff

was noted as being compliant with his diet and medications, and he was continued on the same course of medications. (AR 1348-51.) He was again treated with thoracentesis due to evidence of a large right pleural effusion. (AR 1085, 1321.) Diagnostic studies following this procedure showed decreased right pleural effusion. (AR 1094.) Plaintiff was referred to a gastrointestinal specialist due to continued evidence of lower extremity swelling caused by alcoholic cirrhosis of the liver, who treated Plaintiff with diuretic medications. (AR 1350-51.)

In July 2016, Plaintiff was admitted to the hospital due to another episode of right pleural effusion. (AR 675, 777-79.) He was noted as having right hydrothorax secondary to advanced liver cirrhosis. (AR 711.) Plaintiff underwent another thoracentesis, but laboratory findings showed no evidence of inflammatory or malignant cells. (AR 784.) During this time, Plaintiff was also continued on the same medications for his diabetes-related symptoms and hypertension. (AR 2001.) Upon discharge, Plaintiff ambulated independently and had retained strength in the upper and lower extremities. (AR 591.) A subsequent study showed decreased right pleural effusion and no evidence of pneumothorax. (AR 2118.) Plaintiff was again referred to a gastrointestinal specialist due to cirrhosis. (AR 2056.) Notes from this period also show that Plaintiff's asthma was being treated with inhalers. (AR 2135.)

Days after his discharge, Plaintiff was evaluated by a pulmonologist after returning to the emergency room with complaints of edema and shortness of breath. (AR 2018.) The pulmonologist opined that Plaintiff's cirrhosis was the likely cause of his pleural effusion. (AR 2040.) Plaintiff was continued on the same course of medication. (AR 2041.) Findings from a September 2016 chest x-ray revealed no evidence of residual pleural effusion. (AR 1968.) In November 2016, Plaintiff was briefly hospitalized and underwent another thoracentesis due to diagnostic evidence of right pleural effusion. (AR 1802, 1804.) Findings from a chest x-ray performed after this procedure showed improvement in the condition. (AR 1805; *see also* AR 1738.) An ultrasound of Plaintiff's femoral/popliteal deep venous system revealed unremarkable results. (AR 1803.) In December 2016, during an appointment for

9

treatment for acute LLE cellulitis, Plaintiff was noted as having no focal neurological deficits. (AR 1434.) An x-ray of Plaintiff's lower extremities taken at this time continued to show no significant findings relating to cirrhosis. (AR 1484.)

Finally, there is no evidence that Plaintiff experienced any organ damage, history of stroke, cardiovascular disease, or functional limitations related to his elevated blood pressure; or residual deficits following his November 2016 hospitalization for cirrhosis-related issues.

**B. Opinion Evidence**

The record shows that in May 2015, Plaintiff was examined in connection with his disability claim by Vicente R. Bernabe, D.O., a board certified doctor of orthopedics. (AR 494-98.) Plaintiff presented to Dr. Bernabe complaining of lower back pain, which had persisted for approximately seven years, and for which his only treatment was pain medication. (AR 494.) Dr. Bernabe did not review Plaintiff's medical record. (AR 494.) A physical examination revealed normal findings in Plaintiff's cervical spine, shoulders, elbows, wrists, hands, lumbosacral spine (while noting tenderness to palpation at the thoracolumbar junction), straight leg test, hips, knees, ankles, and feet. (AR 496-97.) Plaintiff's neurological examination revealed normal motor strength, cranial nerves, sensory perception, reflexes, and pulses. (AR 497.) Dr. Bernabe noted that Plaintiff could walk without assistance or difficulty. (*Id.*) He diagnosed Plaintiff with lumbago (and noted that Plaintiff had previously been diagnosed with diabetes and hypertension). (AR 495, 497.) Dr. Bernabe concluded that Plaintiff had no functional restrictions in any areas. (AR 497-98.)

Also in May 2015, Plaintiff was evaluated by R. Jacobs, M.D., a state agency medical consultant, who made findings in connection with Plaintiff's initial disability determination. (*See* AR 71-75.) Dr. Jacobs reviewed some of Plaintiff's medical records between 2014 and 2015, including Dr. Bernabe's evaluation, and physically examined Plaintiff before his

evaluation. (AR 72-73.) He found that Plaintiff had the medically determinable impairments of a spine disorder, chronic liver disease and cirrhosis, and essential hypertension, but found that none of these impairments were severe. (AR 73-74.) He found that while Plaintiff's impairments could reasonably be expected to produce Plaintiff's symptoms, Plaintiff was only partially credible and his allegations were not substantiated by the objective medical evidence. (AR 74.) Dr. Jacobs did not assess Plaintiff's RFC. (*Id.*) He concluded that Plaintiff was not disabled, and stated that the evidence in Plaintiff's medical file was not sufficient to fully evaluate his claim, but, nonetheless, the available evidence established that Plaintiff's condition was not disabling on any date through Plaintiff's date last insured. (AR 75.)

In July 2015, Plaintiff's disability application was reviewed by Stuart L. Laiken, M.D., a state agency medical consultant, in connection with Plaintiff's decision on reconsideration. (AR 92-98.) Dr. Laiken also reviewed some of the objective evidence between 2014 and 2015, including Dr. Bernabe's evaluation, and made similar findings as Dr. Jacobs concerning Plaintiff's medically determinable impairments and credibility; however, he found that Plaintiff's chronic liver disease and cirrhosis was a severe condition. (AR 92-94.) Dr. Laiken assessed Plaintiff's RFC: he could occasionally lift and/or carry 20 pounds; he could frequently lift and/or carry 10 pounds; he could stand/or walk a total of 6 hours in an 8-hour workday; he could sit for a total of 6 hours in an 8-hour workday; he had no restrictions in his ability to push and pull; he had postural limitations; he could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and he could never climb ladders, ropes, or scaffolds. (AR 94-95.) Plaintiff had no manipulative, visual, or communicative limitations, but he had environmental limitations in that he should avoid concentrated exposure to hazards (machinery, heights, etc.). (AR 95-96.) Dr. Laiken found that Plaintiff could not perform his past relevant work, but found that Plaintiff had the ability to do light work and could perform some jobs existing in significant number in the national economy. (AR 97 (citing DOT 209.587-010 (addresser), 521.687-086 (nut sorter), 685.687-014 (cuff folder)).) In sum, Dr. Laiken found that Plaintiff was not disabled. (AR 97-98.)

In May 2017, after Plaintiff's April 20, 2017 hearing, the ALJ propounded interrogatories on impartial medical expert Mona Khater, M.D., a family practice practitioner. (AR 2140-50.) In June 2017, Dr. Khater reviewed Plaintiff's entire medical record and completed the interrogatories, making the following findings. (AR 2152-61.) Plaintiff could lift and carry up to 10 pounds continuously, up to 30 pounds frequently, up to 50 pounds occasionally, and never up to 100 pounds. (AR 2152.) Without interruption in an eight-hour workday, Plaintiff could sit for eight hours, stand for one hour, and walk for two hours. (AR 2153.) He could reach, handle, finger, feel, push, pull, operate foot controls, climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, crouch, and crawl frequently. (AR 2154-55.) As to Plaintiff's environmental limitations, he could never be exposed to unprotected heights, could frequently move mechanical parts and operate a motion vehicle, and could occasionally tolerate humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. (AR 2156.) Dr. Khater opined that Plaintiff had no restrictions in his activities of daily living. (AR 2157.) She found that Plaintiff's impairments did not establish any impairment described in the listings, stating that the record showed that Plaintiff's orthopedic symptoms were normal, but noted that Plaintiff had an endocrine disorder (uncontrolled diabetes mellitus). (AR 2158.) She concluded that Plaintiff had no functional limitations. (AR 2159.)

### III. The ALJ's Decision

The ALJ found that Plaintiff had the RFC to perform light work, with the following limitations: "[he] can list and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks; he can sit for six hours out of an eight-hour workday with regular breaks; he needs a sit/stand option at the work station every 30 minutes, but would not be off task more than 10% of the workday; he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; he can have occasional exposure to

environmental irritants, such as fumes, odors, dusts, and gases, and occasional exposure to poorly ventilated areas; he can have only occasional use of moving, hazardous machinery; and he can have only occasional exposure to unprotected heights and work on uneven terrain." (AR 18-19.) The ALJ made the following findings in support of her assessment.

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence. (AR 19-20.) The ALJ noted that there were two periods at issue in this case: the first ran between September 10, 2010[7] and Plaintiff's date last insured, September 30, 2010; the second ran between the date Plaintiff filed an application for SSI through the date of the ALJ's decision. (AR 20.) The ALJ noted that she considered Plaintiff's complete medical history, including evidence from outside the two periods. (*Id.*) She concluded that the record evidence post-dating the alleged onset date did not support more restrictive functional limitations than she assessed, and there was no evidence to support any disabling functional limitation prior to Plaintiff's alleged onset date/date last insured. (*Id.*)

The ALJ discussed Plaintiff's medical history, summarized and discussed at length above. This included his history of treatment for diabetes between 2013 and 2016, discussed above. (AR 20-21.) She then discussed Plaintiff's history of hypertension, but noted that there was no evidence of any end organ damage, history of stroke, cardiovascular disease, or functional limitations related to Plaintiff's elevated blood pressures. (AR 21.) She discussed Plaintiff's liver cirrhosis and history of alcohol abuse, but determined there was no evidence indicating residual deficits from this condition. (AR 21-22.) She acknowledged that Plaintiff had been treated for asthma since childhood, but noted that it was being managed medically

---

[7] It is unclear how the ALJ derived the September 10, 2010 onset date because the record consistently notes that Plaintiff's alleged onset date and his date last insured are the same date: September 30, 2010. Nevertheless, this issue need not be resolved because Plaintiff only disputes the ALJ's RFC assessment during the latter period..

13

and should be amenable to proper control to adherence to recommended medical management and medication compliance; and there was no evidence that Plaintiff required frequent inpatient hospitalization due to asthma. (AR 22.) Even so, the ALJ noted that she had considered Plaintiff's asthma, and environmental restrictions factored into her RFC assessment. (*Id.*) As to Plaintiff's obesity, the ALJ noted that it was severe and its impact had been considered in her RFC determination. (*Id.*)

The ALJ found that the evidence showed that a conservative course of treatment, when followed, effectively controlled Plaintiff's diabetes, hypertension, and asthma. (AR 23.) She acknowledged that Plaintiff had been hospitalized for complications related to cirrhosis, but the record did not support Plaintiff's allegation that he required periodic drainage of his lungs. (*Id.*) Although Plaintiff underwent thoracentesis three times in 2016, the condition stabilized within one year and thus, was not severe within the meaning of the regulations. (*Id.*) The ALJ concluded that evidence about the duration and frequency of Plaintiff's symptoms did not support the severity of symptoms that he alleged. (*Id.*) She thereafter concluded that while Plaintiff suggested that his ability to move was limited, there was no evidence of atrophy. (*Id.*) Thus, the ALJ found that while Plaintiff experienced some pain, it did not alter his use of his muscles so severely as to result in atrophy. (*Id.*) The ALJ found that Plaintiff's daily activities, including caring for his personal hygiene, grocery shopping, and using public transportation, were also inconsistent with his allegations of disabling functional limitations. (*Id.*)

Turning to the opinion evidence, the ALJ determined that there was no evidence that any treating doctor had placed restrictions on Plaintiff. (*Id.*) The ALJ gave great weight to the opinions of the state agency medical consultants, finding that their opinions were not contradicted by evidence in the record and the RFCs they assessed were reasonable and consistent with the objective medical evidence. (AR 23-24.) The ALJ also acknowledged the limitations they assessed and took those limitations into consideration, incorporating them within her own RFC assessment. (AR 24.) The ALJ gave great weight to the opinion of Dr.

14

Bernabe to the extent he opined on Plaintiff's orthopedic limitations because Dr. Bernabe's opinion was supported by the generally mild orthopedic examination findings and lack of medical evidence in the record. (*Id.*) However, because Dr. Bernabe did not consider Plaintiff's other impairments in his opinion, the ALJ gave his opinion less weight because the record showed that the other impairments would cause additional physical limitations. (*Id.*) The ALJ declined to give great weight to the opinion of Dr. Khater because her opinion was internally inconsistent, explaining that the opinions of the stage agency medical consultants were more consistent with the record. (*Id.*)

The ALJ concluded that her RFC assessment was supported by the evidence as a whole, Plaintiff's subjective complaints were inconsistent with the objective medical evidence, and the objective evidence did not support the severe symptoms that Plaintiff alleged. (*Id.*)

**IV. Analysis**

Plaintiff argues that the opinion evidence in the record does not constitute "substantial evidence" on which the ALJ was permitted to rely in making her RFC assessment; and the ALJ was not qualified to interpret the objective medical evidence in functional terms (and so, it too does not constitute "substantial evidence" on which the ALJ was permitted to rely). (Joint Stip. at 5-9.) He also argues that the ALJ failed to develop the record to adduce evidence that could support her functional assessment. (*Id.* at 9.)

As an initial matter, the ALJ gave several specific and legitimate reasons, supported by substantial evidence, to support her RFC assessment, with which Plaintiff does not take issue. Notably, the ALJ correctly observed that Plaintiff's course of treatment for his diabetes, hypertension, and asthma, consisting predominantly of insulin, prescribed medications, and inhalers, indicated a conservative course of treatment that is not generally not associated with a disabling impairment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (permitting

15

an ALJ to rely on a conservative course of treatment to discredit claimant's allegations of disabling symptoms). The ALJ also observed that, although Plaintiff received serious treatment for his cirrhosis and related issues, including hospitalization and thoracentesis, the issue was successfully resolved within one year and there was no evidence of any residual complications; thus, Plaintiff failed to meet the duration requirement for disability. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509 (requiring an impairment to have lasted or be expected to last for a continuous period of not less than 12 months for the claimant to be found disabled). Finally, the ALJ properly considered Plaintiff's activities of daily living in his analysis and assessed an RFC that was consistent with the activities that Plaintiff testified he could perform. *See Burch*, 400 F.3d at 681.

Plaintiff attempts to undermine the foundation on which the RFC assessment is based by arguing that discrete elements of that foundation do not, on their own, constitute substantial evidence to support the assessment. (*See, e.g.*, Joint Stip. at 6-7 (arguing that state agency consultants' opinions do not rise to level of substantial evidence); *id.* at 7 (arguing that Dr. Bernabe's opinion does not rise to level of substantial evidence); *id.* at 8-9 (arguing that raw medical data itself does not constitute substantial evidence on which ALJ was permitted to rely).) Essentially, Plaintiff tries to convince the Court that because no *individual* medical opinion or report constitutes substantial evidence to support the RFC determination, the entire basis of the ALJ's decision crumbles. The Court is not persuaded by this approach.

Plaintiff's RFC is an assessment based on the record as a whole. The record consists of each discrete element woven together to illustrate a unified picture of Plaintiff's condition, which in turn informs the Commissioner (and the Court) what Plaintiff can and cannot do, and whether he may be entitled to benefits. While certain opinions or reports in the record may not support all aspects of RFC, the RFC is an aggregate determination of all of the opinions and reports, many of which may discuss seemingly unrelated and distinct alleged impairments. The Court's role in a disability case is "review the administrative record *as a whole*, weighing

both the evidence that supports and that which detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039 (emphasis added). Here, the ALJ based her RFC assessment on the opinions of several doctors, thousands of pages of objective medical records, spanning several years, and an evaluation of Plaintiff's own subjective statements (with which Plaintiff does not take issue). (*See* AR 18-24.)

Plaintiff first contends that the opinions of the state agency consultants, Drs. Jacobs and Laiken, do not rise to the level of substantial evidence to support the ALJ's RFC assessment because neither doctor could review the significant evidence in the record that came into existence after they gave their opinions in mid-2015. (*Id.* at 6-7.) Plaintiff is incorrect. "Reports of consultative physicians called in by the Secretary may serve as substantial evidence." *Andrews*, 53 F.3d at 1040. Indeed, "[t]he analysis and opinion of an expert selected by the ALJ may be helpful to the ALJ's adjudication." *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989). Consultative examiners, who evaluate a claimant's condition during the initial phases of the benefits application process, will never have all of the evidence available to the ALJ, whose decision is rendered often years later, at which point the claimant will have amassed additional evidence of his alleged disability. That does not diminish the value of their opinions, especially where, as here, the examiners reviewed the available evidence predating their opinions, and the ALJ considered other doctors' opinions and the trove of objective record evidence of Plaintiff's conditions. *Cf. Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1221-22, 1227-28 (9th Cir. 2009) (finding that the ALJ properly relied "in large part" on the opinion of state agency physician in formulating RFC). Accordingly, the ALJ properly credited the opinions of the state agency consultants and incorporated Dr. Laiken's opined limitations in his RFC assessment.

Plaintiff contends that Dr. Bernabe's opinion does not rise to the level of substantial evidence because he did not evaluate all of Plaintiff's impairments. (Joint Stip. at 7.) However, the ALJ only gave great weight to Dr. Bernabe opinion to the extent he opined about

17

Plaintiff's orthopedic limitations. (AR 24.) The ALJ acknowledged that Dr. Bernabe did not consider Plaintiff's other impairments and gave the opinion less weight because the other evidence in the record showed that the impairments from which Plaintiff suffered that Dr. Bernabe did not consider *would* cause physical limitations. (*Id.*) Thus, while Dr. Bernabe's opinion alone cannot substantiate the ALJ's entire functional assessment, it contributed to that assessment. The ALJ properly qualified Dr. Bernabe's opinion, only credited it to the extent it was consistent with the objective evidence in the record, and explicitly recognized that Plaintiff had additional impairments that did cause physical limitations.

Plaintiff next contends that the ALJ failed to give specific and legitimate reasons for discounting the opinion of Dr. Khater; she improperly interpreted Dr. Khater's opinion; and to the extent she believed that Dr. Khater's responses to interrogatories were ambiguous, she failed to request Dr. Khater's clarification. (Joint Stip. at 7-8.) Plaintiff's arguments concerning Dr. Khater are also unavailing. First, internal inconsistencies in a doctor's opinion are a valid, specific, and legitimate reason to accord less weight to that opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir 2001). Second, the ALJ properly interpreted Dr. Khater's opinion and found that it was internally inconsistent. In her answers to the ALJ's interrogatories, Dr. Khater opined that could lift and carry up to 10 pounds continuously, up to 30 pounds frequently, up to 50 pounds occasionally, and never up to 100 pounds. (AR 2152.) Without interruption in an eight-hour workday, Plaintiff could stand for one hour and walk for two hours. (AR 2153.) Additionally, Plaintiff could never be exposed to unprotected heights. (AR 2156.) However, Dr. Khater also concluded that Plaintiff had no functional limitations. (AR 2159.) Dr. Khater's conclusion is clearly at odds with her finding that Plaintiff had some restrictions in his abilities to lift, carry, stand, walk, and be exposed to unprotected heights, however mild. Thus, the ALJ properly interpreted Dr. Khater's opinion as internally inconsistent. Finally, nothing in the ALJ's decision implies that she believed that Dr. Khater's opinion was ambiguous, such that her duty to further develop the record would be triggered. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). In fact, the

ALJ's decision notes that Dr. Khater clearly answered the interrogatories, but that her answers were internally inconsistent. (AR 24.) This unambiguous internal inconsistency was a specific and legitimate reason to discount Dr. Khater's opinion.

Finally, Plaintiff contends that the ALJ improperly interpreted the objective medical evidence in functional terms and should have further developed the record. (Joint Stip. at 8-9.) "The RFC assessment must be based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment." *Bowser v. Comm'r of Soc. Sec.*, 121 F. App'x 231, 244 (9th Cir. 2005) (citing Soc. Sec. Reg. 96-8p, 1996 WL 374184 (July 2, 1996)). An RFC assessment must contain *inter alia*, "a thorough discussion and analysis of the objective medical and other evidence." *Id.* Here, the ALJ did not, as Plaintiff contends, interpret the objective evidence in functional terms. Rather, she discussed and analyzed the objective evidence as required by the regulations, as well as evidence of opinions in the record, Plaintiff's activities of daily living, and his own subjective statements. Only then did the ALJ lay out Plaintiff's functional restrictions based on her discussion of the pertinent information in the record. The ALJ also did not signify that any of the evidence discussed in her opinion was ambiguous, which would trigger her duty to further develop the record. *See Mayes*, 276 F.3d at 459-60. She was able to decide Plaintiff's case, including making her RFC finding, based on the evidence already available to her. The fact that the ALJ ultimately denied Plaintiff's claim does not mean that the evidence before her was ambiguous.

While not every opinion or report supports every limitation (because not every doctor opined about every condition from which Plaintiff suffered), every limitation the ALJ assessed in this case finds support in the record evidence. Plaintiff's attempts to undermine parts of that aggregate assessment are availing. As outlined above, the ALJ's RFC assessment is supported by substantial evidence. Accordingly, the ALJ's RFC assessment is free of legal error and must be affirmed.

19

# CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, it is ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: January 28, 2020

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE